UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

FILED
AUG 24 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CRIMINAL NO. 06-30012 |
| STEVEN BOYCE | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Gregory M. Gilmore and Patrick J. Chesley, Assistant United States Attorneys, and the defendant, Steven Boyce, personally and by his attorney, Frederick J. Schlosser, have agreed upon the following:

### THE PLEA

1. The defendant will enter a Plea of Guilty to counts one, two, three and six of the Indictment, charging him with Wire Fraud in violation of 18 U.S.C. Sections 1343, 1346 and 2.

### ELEMENTS OF THE CHARGE

2. The offense of Wire Fraud has the following elements, each of which the government must prove beyond a reasonable doubt.

- First, that the defendant knowingly participated in the scheme to defraud or obtain money or property by means of false pretenses, representations or promises as described in Counts one through four of the indictment;

- Second, that the defendant did so knowingly and with the intent to defraud; and

- Third, that for purposes of carrying out the scheme, the schemers caused an

interstate wire communication to take place in the manner charged in the particular count of the indictment.

## POTENTIAL PENALTIES

3.  The charge of Wire Fraud has the following potential penalties (per count):

    (a)  Up to 20 years of imprisonment;

    (b)  Up to 3 years of supervised release;

    (c)  Up to a $250,000.00 fine;

    (d)  Mandatory special assessment of $100.00; and

    (e)  Restitution.

4.  The defendant further understands and agrees to pay the mandatory Special Assessment as required under Title 18, United States Code, Section 3013. The defendant agrees to pay this mandatory special assessment at the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that he will be required to do so as a condition of this Plea Agreement. No failure to comply with this requirement, however, will constitute grounds for the defendant to withdraw any plea of guilty.

## ACCEPTANCE OF RESPONSIBILITY

5.  The parties agree, based upon the facts currently known by the United States, that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct in accordance with § 3E1.1 of the United States Sentencing Guidelines and, therefore, is entitled to a two level reduction for acceptance of responsibility under the Guidelines.

The parties also agree that if the defendant's base offense level is 16 or higher that the defendant qualifies for an additional one-point reduction in the defendant's offense level

2

pursuant to United States Sentencing Guidelines Section 3E1.1(b)(2) because the defendant timely notified the United States Attorney's Office of his intention to enter a plea of guilty, thereby permitting the United States to avoid trial preparation and permitting the Court to allocate its resources efficiently. Alternatively, if the defendant's offense level is 16 or higher, the government will move under Section 3E1.1(b) to decrease the defendant's guideline level by one-point on the basis that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

## ADVISORY SENTENCING GUIDELINES

6. The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and that the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guidelines range when imposing sentence. The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed.

The United States and the defendant agree that the following facts are true for the purpose of calculating of the sentencing guideline sentencing range:

That U.S.S.G §2B1.1 (Theft, Embezzlement, and Other Forms of Theft; Fraud and Deceit) is the applicable Offense Conduct section under the Sentencing Guidelines.

The United States and the defendant agree regarding the defendant's offense level as follows:

| | |
|---|---|
| Base Offense Conduct (USSG §2B1.1(a)(1)): | 7 |
| Specific Offense Characteristic ((b)(1)(F) (more than $120,000 but less than $200,000) | +10 |
| Acceptance of Responsibility (3E1.1) | <u>-3</u> |
| Total Offense Level | 14 |

7. The government will not oppose a sentence at the low end of the Guideline range as determined by the Court.

## STIPULATION OF FACTS

8. In pleading guilty, the defendant stipulates and agrees to the following:

The defendant was employed full time as a night janitor for the Division of Physical Services of the Illinois Secretary of State's Office from April, 1984 until November, 2005. During at least part of that time, his co-defendants Dana Dinora and David Medvesek were similarly employed as night janitors for the same state agency. Co-defendant Cecil Turner was the Director of the Division of Physical Services from 1999 until November, 2005. As such, co-defendant Turner was not the immediate supervisor of the defendant and co-defendants Dinora and Medvesek (referred to collectively as "night janitors"). Co-defendant Turner was at least one step above the night janitors' immediate supervisors and consequently was in a position to, among other things, address any complaints those supervisors had about the night janitors.

As employees of the Secretary of State's Office, the defendant and his co-defendants each had a duty to provide honest, loyal and faithful services to his employer, the government of the State of Illinois. As part of that duty, the night janitors were required to arrive at work on time, remain at work during their official duty hours and perform assigned work during those hours.

In particular, the defendant and his co-defendants Dinora and Medvesek were responsible each work day to provide janitorial services at state office buildings in Springfield, Illinois, including the Herndon Building and the Court of Claims Building. Their official duty work hours were from 3:00 p.m. to 11:00 p.m., Monday through Friday. For any period of time the night janitors were not at work during their official duty hours (other than holidays and allowed work breaks), they were required to submit and have approved leave requests. They were not entitled to receive pay for any hours they did not work unless they were on approved leave or those hours fell on an official holiday.

Instead of arriving at work on time and remaining at work during their official duty hours, the defendant and his co-defendants Dinora and Medvesek developed a scheme whereby one or more of them at a time did not show up for work or left work during official duty hours without taking approved leave and yet falsely and fraudulently represented to the Secretary of State's Office and the State of Illinois that all three of them had worked the appropriate hours. As a result of this scheme and the false and fraudulent representations, the defendant and his co-defendants Dinora and Medvesek received their full salaries despite the fact that each of them worked only a fraction of his official duty hours during many of the pay periods during the scheme.

As part of their scheme, the defendant and his co-defendants Dinora and Medvesek attempted to conceal from their immediate supervisors the fact that they were not at work when they were supposed to be there. Co-defendant Dinora advised the defendant that Dinora knew co-defendant Turner personally, had arranged personal favors for Turner, and that Turner would try to prevent the night janitors' immediate supervisors from taking any disciplinary action against

any of the night janitors. The defendant and his co-defendants Dinora and Medvesek also jointly developed methods to cover-up their own and each others' unauthorized absences from work. For example, whenever the defendant left work prior to his official quitting time, he typically placed a note regarding his purported whereabouts in the night janitor's area in the Herndon Building. That note, which had been prepared by co-defendant Dinora and was stored in a drawer and re-used by the night janitors, read, "Left for the Court of Claims Building, page me, Dana" (referring to co-defendant Dana Dinora). The defendant left the note even though he had no intention of going to the Court of Claims Building and even though he knew Dana Dinora was not at work at the time. The defendant knew that his co-defendant Medvesek did the same thing when Medvesek left work prematurely.

Another way the defendant helped cover up the scheme was to tell people such as his immediate supervisors who asked the whereabouts of either of his co-defendant night janitors that the other janitor was at another building, even though the defendant knew that the other janitor was not working at another state office building because the other janitor was not working at all. To complete the cover-up, the defendant typically telephoned the other janitor and tipped him off about the inquiry so the other janitor could come into work or fill out the appropriate leave slip and thereby avoid detection of the scheme. As the defendant knew, his co-defendants Dinora and Medvesek did the same thing for him throughout the scheme in order to cover up and prevent detection of his unauthorized absences from work.

Throughout the period of the scheme, the defendant also routinely caused to be submitted to the Illinois Secretary of State's Office paperwork that represented that he had been at work during his official duty hours when in fact, as he well knew, he had not been at work during those

hours. As the defendant well knew, his co-defendant night janitors did the same thing. Beginning in 1999 and throughout the period of the scheme, the defendant and his co-defendants Dinora and Medvesek were paid by the Secretary of State's Office and State of Illinois as if they had worked full time when in fact they had not worked full time. As the scheme progressed over time, the number of official duty hours the night janitors were supposed to work remained the same, but the number of those hours they actually worked decreased. By 2004 and continuing until August of 2005, the defendant worked only about half of the hours he was supposed to work; co-defendant Medvesek worked only about half of the hours he was supposed to work; and co-defendant Dinora worked virtually none of hours he was supposed to work. The total number of official duty hours for which the three night janitors were paid but which they did not work (without taking leave) exceeded 8,000 hours. The night janitors' fraudulent scheme caused the State of Illinois to pay those janitors between $120,000 and $200,000 to which they were not entitled.

The defendant and Dinora were paid by the State of Illinois via direct deposit to their respective bank accounts. Each direct deposit of their salaries was accomplished by the use of a wire transfer that traveled interstate. Those wire transfers include the communication of Dinora's paychecks on or about October 26, November 10 and December 23, 2004, and the defendant's paycheck on or about November 10, 2004.

## COOPERATION

9. As a condition of this entire plea agreement, the defendant will cooperate fully with law enforcement officials as to his knowledge of and/or involvement in any violation of the criminal laws. All information and testimony given by the defendant must at all times be

complete and truthful. This means, for instance, that he must neither minimize his own actions nor fabricate or exaggerate anyone else's actions or involvement. The defendant's status does not hinge upon obtaining a conviction against anyone else; it is dependent solely upon his being truthful about the facts, whatever those facts may be.

10.     The defendant agrees that if he violates the terms of this cooperation agreement, the government will be completely released from all of its obligations under this plea agreement. The defendant agrees, however, that under such a circumstance he will not be allowed to withdraw from any previously entered guilty plea.

11.     The government agrees that at the time of sentencing it will fully inform the Court of the nature, extent, and value of any cooperation rendered by the defendant.

12.     The government reserves the right, in its sole discretion, to make a motion at the time of sentencing for a downward departure from the sentencing guideline range, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) if the defendant provides substantial assistance in the investigation or prosecution of other criminal offenses. The extent of any such recommended departure will depend solely upon the government's evaluation of the nature, extent, and value of the defendant's assistance, including his truthfulness.

## WAIVER OF RIGHT OF APPEAL FROM CONVICTION AND SENTENCE

13.     The defendant is aware that Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that such section and Title 18, United States Code, Section 3742, affords a defendant a right to appeal the sentence imposed. Understanding those rights and having thoroughly discussed those rights with his attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to his

plea agreement and conviction in exchange for the concessions made by the United States in this plea agreement. The defendant further waives the right to appeal his sentence, including any fine or restitution, or the manner in which the sentence, including any fine or restitution, was determined, on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatever, excepting however, that the defendant retains the right to appeal any sentence imposed which is above his advisory sentencing guidelines range (upward departure).

### WAIVER OF RIGHT TO COLLATERAL ATTACK

14.    The defendant also understands that he has a right to attack his sentence collaterally on the grounds it was imposed in violation of the Constitution or laws of the United States, he received ineffective assistance from his attorney, this Court was without proper jurisdiction or the sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and his attorney have reviewed Section 2255, and the defendant understands the rights that statute gives him. The defendant's attorney has fully discussed and explained this waiver with the defendant but has made no recommendation to the defendant as to the waiver of a motion under Title 28, United States Code, Section 2255. Regardless of any advice his attorney has given him one way or the other, in exchange for the concessions made by the United States in this Plea Agreement, the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence, including any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal

or collaterally attack any issues relating to his conviction and to his sentence so long as the sentence is within the maximum provided in the statutes of conviction. Notwithstanding the above, the defendant reserves the right to appeal the imposition of a sentence which is above the advisory sentencing guideline range (upward departure).

### ACKNOWLEDGMENT OF VOLUNTARINESS OF WAIVER

15.     The defendant states that he has not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive his rights to appeal or collaterally attack his sentence by his attorney or anyone else. The defendant is waiving those rights because he personally believes it is in his best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement. The defendant understands the United States is unwilling to make some of those concessions unless he is willing to waive his rights to appeal or collaterally attack his sentence as part of the bargain. The defendant and his attorney asks the Court to accept this waiver so he can receive the full benefit of this agreement.

### VIOLATION OF AGREEMENT BY DEFENDANT

16.     The defendant and his attorney acknowledge that the defendant has read this entire Plea Agreement carefully and has discussed it fully with his attorney. The defendant further understands and agrees that if he violates a term or condition of this Plea Agreement, the United States will be completely released from all of its obligations under this Plea Agreement. The defendant agrees, however, that under such a circumstance he will not be allowed to withdraw from any previously accepted guilty plea.

17.     The defendant further agrees that if he violates the Plea Agreement, the United States will be allowed to move to vacate the defendant's conviction and sentence and pursue any

charges against the defendant at its sole discretion.

18.    The defendant also agrees to waive any and all double jeopardy rights and the statute of limitations should the United States decide to pursue any charges against the defendant after a violation of the Plea Agreement. The defendant agrees, however, that under such a circumstance he will not be allowed to withdraw any previously accepted guilty plea.

ACKNOWLEDGMENTS OF DEFENDANT AND DEFENSE COUNSEL

19.    The defendant and his attorney acknowledge that they have reviewed and defendant understands the possible application of Sentencing Guidelines §1B1.3 (Relevant Conduct) and §1B1.4 (Information to be Used in Imposing Sentence).

20.    The defendant understands that by entering a Plea of Guilty, the defendant is waiving certain of his rights. Specifically, the defendant understands that by pleading guilty he is waiving the following rights:

A.    If the defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or, if agreed by the United States Attorney, to a trial by the judge sitting without a jury. The defendant has a right to a jury trial.

B.    If the trial were a jury trial, the jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt.

C.    At a trial, the United States would be required to present its witnesses and

other evidence against the defendant. In turn, the defendant could present witnesses and other evidence in his own behalf. If the witnesses for the defendant would not appear voluntarily, their attendance could be compelled through the subpoena power of the Court.

        D.      At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from the refusal to testify. If the defendant desired to do so, he could testify in his own behalf.

21.    I have read this Plea Agreement and have discussed it fully with my client. It accurately and completely sets forth the entire Plea Agreement. I concur in the guilty plea as set forth in this Plea Agreement.

Date: 0/24/06

s/Defendant's Attorney
Frederick J. Schlosser
Attorney for the Defendant

22.    Defendant

I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand fully this Plea Agreement.

I fully understand this agreement, including the paragraphs labeled "Waiver of Right to Appeal" and "Waiver of Right to Collateral Attack." I am entering into this agreement voluntarily and of my own free will in order to gain the benefit of the promises made by the United States. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in

this agreement about my criminal conduct are true. I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement.

I am satisfied with the legal services provided by my attorney in connection with this case, this Plea Agreement and matters related to it.

Date: 8-24-06                                s/Defendant
                                             Steven Boyce
                                             Defendant

## ACKNOWLEDGMENT OF THE UNITED STATES

23.   I accept and agree to this Plea Agreement for the United States of America.

Date: August 23, 2006                        s/ U.S. Attorney
                                             Gregory M. Gilmore
                                             Assistant United States Attorney

Date: 8/23/06                                s/Assistant US Attorney
                                             Patrick J. Chesley
                                             Assistant United States Attorney